## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Solutran, Inc. | Case No. 13-cv-2637 (SRN/BRT) |
| Plaintiff, | |
| v. | |
| U.S. Bancorp and Elavon, Inc., | |
| Defendants. | |
| | **MEMORANDUM OPINION AND ORDER** |
| U.S. Bancorp and Elavon, Inc. | |
| Counter-claimants, | |
| v. | |
| Solutran, Inc. | |
| Counter-defendant. | |

David J. Wallace-Jackson, Robert J. Gilbertson, and Sybil L. Dunlop, Greene Espel PLLP, 222 South Ninth Street, Suite 2200, Minneapolis, Minnesota, for Plaintiff and Counter-defendant.

Ben D. Kappelman, Kenneth E. Levitt, Peter M. Lancaster, Dorsey & Whitney LLP, 50 South Sixth Street, Suite 1500, Minneapolis, Minnesota 55402, and J. Thomas Vitt, Jones Day, 90 South Seventh Street, Suite 4950, Minneapolis, Minnesota 55402, for Defendants and Counter-claimants.

SUSAN RICHARD NELSON, United States District Judge

## I.    INTRODUCTION

This matter comes before the Court on the parties' cross-motions for summary judgment.  (*See* Pl.'s Mot. for Summ. J. [Doc. No. 183]; Defs.' Mot. for Summ. J. [Doc. No. 170].)  For the reasons that follow, Plaintiff's motion is granted, and Defendants' motion is denied.

## II.    BACKGROUND

Plaintiff Solutran, Inc. ("Solutran") is the owner by assignment of United States Patent No. 8,311,945 (the "'945 Patent"), which claims a system and method for processing check transactions.  (*See* Compl. ¶ 10 [Doc. No. 1].)  According to Solutran, its system improves on legacy check processing systems by eliminating the need for merchants to scan checks after they are received, and by speeding the rate at which the merchant's account would be credited with a payment.  (*See* Pl.'s Opening Claim Construction Br. at 4–6 [Doc. No. 78].)  Solutran's check processing system is marketed as "Solutran's POS [Point of Sale] Imaging Network," or "SPIN."  (*See* Compl. ¶ 9.)

On September 25, 2013, Solutran filed suit against Defendants U.S. Bancorp and its subsidiary, Elavon, Inc. (collectively, "US Bank"), alleging infringement of the '945 Patent.  (*See generally id.*)  In particular, Solutran contends that US Bank's competing "Electronic Check Service," or "ECS," system is practically identical to SPIN, and infringes at least one of the claims of the '945 Patent.  (*See generally id.*)  US Bank has consistently denied any infringement and brings counterclaims in its own right against

2

Solutran, seeking declaratory judgments of non-infringement and patent invalidity. (*See generally* Am. Answer [Doc. No. 17].)

In February 2014, US Bank petitioned for a Covered Business Model ("CBM") review of the '945 Patent before the U.S. Patent and Trademark Office's Patent Trial and Appeal Board ("PTAB"), arguing that: (1) the patent was invalid under 35 U.S.C. § 101; and (2) the patent's claims were unpatentable under 35 U.S.C. § 103 as obvious. *See US Bancorp v. Solutran, Inc.,* No. CBM2014-00076, 2014 WL 3943913, at *1 (PTAB Aug. 7, 2014). The PTAB rejected US Bank's § 101 argument, but instituted the CBM proceeding based on the § 103 argument. S*ee id.* at *6–13. While the CBM review was underway, this Court stayed proceedings in this district court action. (*See* Sept. 18, 2014 Order to Stay [Doc. No. 50].) After the PTAB found that the challenged claims in the '945 Patent were not unpatentable as obvious, *see US Bancorp v. Solutran*, 2015 WL 4698463, at *10–16 (PTAB Aug. 5, 2015), *aff'd*, No. 2016-1302, 668 Fed. App'x 363 (Fed. Cir. 2016), this Court lifted the stay. (*See* Jan. 12, 2016 Text-Only Order [Doc. No. 62].)

Following extensive motion practice and discovery, the Court heard the parties' claim construction arguments on August 30, 2016. (*See* Aug. 30, 2016 Minute Entry [Doc. No. 87].) In total, the parties asked the Court to construe eight different terms found variously in claims 1, 2, 4, and 5 of the '945 Patent. *See Solutran, Inc. v. U.S. Bancorp*, No. 13-cv-2637 (SRN/BRT), 2017 WL 2274959, at *2 (D. Minn. May 24, 2017). At this stage of the litigation, however, the application of only one of those terms is disputed: "comparing by a computer said digital images with said data in the data file

3

to find matches."[1]  This term appears in claims 1(d), 4(e), and 5(e) of the '945 patent—

for illustrative purposes, and to provide needed context, the Court will reproduce claim 1

in full here:

> 1.    A method for processing paper checks, comprising:
>
>     a) electronically receiving a data file containing data captured at a merchant's point of purchase, said data including an amount of a transaction associated with MICR[2] information for each paper check, and said data file not including images of said checks;
>
>     b) after step a) crediting an account for the merchant;
>
>     c) after step b), receiving said paper checks and scanning said checks with a digital image scanner thereby creating digital images of said checks and, for each said check, associating said digital image with said check's MICR information; and
>
>     d) *comparing by a computer said digital images with said data in the data file to find matches.*

(Compl., Ex A ("'945 Patent") at 10:54-67 (emphasis added).)

The Court issued its claim construction order on May 24, 2017.  The parties

responded by filing their cross-motions for summary judgment the following month.

(*See generally* Pl.'s Mot. for Summ. J.; Defs.' Mot. for Summ. J.)  Solutran contends that

the undisputed record evidence shows that US Bank's ECS service practices "every

single step" of claims 1, 2, 3, and 5 of the '945 Patent.  (*See* Pl.'s Mem. in Supp. of Mot.

---

[1] For simplicity, the Court will generally refer to this term as the "comparing step" from this point on.

[2] "MICR" stands for "magnetic ink character recognition."  *See Solutran*, 2017 WL 2274959, at *13.

for Summ. J. ("Pl.'s Mem. in Supp.") at 1 [Doc. No. 185].)[3]  It notes that US Bank now argues non-infringement solely on the basis of the comparing step.  (*See id.*)  In its view, however, the Court's construction of this term resolves the issue in its favor, and thus a judgment of infringement is warranted here.  (*See id.*)  US Bank, however, argues the opposite in its own motion—that the Court's construction makes clear that its service does *not* infringe the '945 Patent.  (*See* Defs.' Mem. in Supp. of Mot. for Summ. J. ("Defs.' Mem. in Supp.") at 2 [Doc. No. 172].)  In the alternative, US Bank also contends that all asserted claims are invalid because they are too abstract to qualify for patent protection under 35 U.S.C. § 101.  (*See id.*)

The Court heard oral argument on the parties' motions on August 11, 2017, and the matter is now ripe for disposition.

## III.    DISCUSSION

### A.    Standard of Review

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" only if it may affect the outcome of the lawsuit.  *TCF Nat'l Bank v. Mkt. Intelligence, Inc.*, 812 F.3d 701, 707 (8th Cir. 2016). Likewise, an issue of material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party bears the burden of

---

[3] The Court's citations refer to the parties' original pagination in their memoranda, as opposed to the ECF pagination.

establishing a lack of genuine issue of fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and the Court must view the evidence and any reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In responding to a motion for summary judgment, however, the nonmoving party may not rest on mere allegations or denials, but must "demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).

**B.    The Issue of Infringement**

A determination of infringement requires a two-step analysis. *See Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1370 (Fed. Cir. 2002). First, the Court must determine the scope and meaning of the patent claims asserted. *See Phil-Insul Corp. v. Airlite Plastics Co.*, 854 F.3d 1344, 1358 (Fed. Cir. 2017). Second, the properly construed claims are compared to the allegedly infringing device or process. *See id.* Although the second inquiry is one of fact, *Transclean Corp.*, 290 F.3d at 1370, the Court may decide infringement on summary judgment if there are no genuine issues of material fact requiring determination at trial. *See, e.g.*, *3M Co. v. Mohan*, No. 09-cv-1413 (ADM/FLN), 2010 WL 3200052, at *2 (D. Minn. Aug. 9, 2010) ("Courts routinely grant summary judgment and find infringement as a matter of law where there is no factual dispute on the infringement question."). Where, as here, "there is no dispute regarding the operation of the accused system[], [the] issue [of infringement] reduces to a question of claim interpretation and is amenable to summary judgment." *MyMail, Ltd. v. Am. Online, Inc.*, 476 F.3d 1372, 1378 (Fed. Cir. 2007).

6

A patent is infringed if every limitation set forth in a claim is present in an accused product or process, either literally or through the doctrine of equivalents. *Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys., Inc.*, 347 F.3d 1314, 1324 (Fed. Cir. 2003). Because only literal infringement is alleged here, Solutran bears the burden of proving that the accused process contains each limitation of an asserted claim. *See id.* Although at this point in the proceedings, US Bank contends only that its process does not meet the requirements of the '945 Patent's comparing step, that step is a required element of all asserted claims. *See Hutchins v. Zoll Med. Corp.*, 492 F.3d 1377, 1382 (Fed. Cir. 2007) (citing 35 U.S.C. § 112, ¶ 4 (pre-AIA)) (noting that limitations in each independent claim are incorporated into every dependent claim). Accordingly, Solutran's infringement argument rises or falls on the application of that step to the accused process. *See Wolverine World Wide, Inc. v. Nike, Inc.*, 38 F.3d 1192, 1199 (Fed. Cir. 1994).

### 1.     The Court's Construction of the "Comparing Step"

The purpose of claim construction is "to arrive at the true and consistent scope" of the claims. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). A claim term can have only correct meaning, *see Linear Tech. Corp. v. Monolithic Power Sys., Inc.*, No. 06-cv-476 (GMS), 2007 WL 6126455, at *2 n.2 (D. Del. Nov. 20, 2007), and in exercising its duty to define that meaning, this Court endeavors always to state its determination with clarity and precision, "for the protection of the patentee [and the benefit of the public]." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996).

The parties' submissions here, however, suggest that the Court was not as clear in defining the comparing step as it had originally intended. As noted above, that step requires "comparing by a computer said digital images with said data in the data file to find matches." One of the key disputed points between the parties in interpreting this term was whether the phrase "said data" necessarily incorporated the definition of that phrase found in claim 1(a),[4] which provides in part for "electronically receiving a data file containing data captured at a merchant's point of purchase, *said data* including an amount of a transaction associated with MICR information . . . ." (*See* '945 Patent at 10:55-58 (emphasis added).) *See Solutran*, 2017 WL 2274959, at *6. US Bank argued that the phrase must be interpreted uniformly across the claims, and that its explicit reference to the transaction amount meant that the comparing step should be read as requiring that the transaction amount be involved in any comparison. *See id.* In contrast, Solutran argued that the phrase could be left to its plain meaning, but that in any event, US Bank's interpretation was improper. *See id.* The Court construed the term, and there the matter rested for the moment. *See id.* at *6-8.

Now, however, the parties once again debate a matter of interpretation—this time with regard to the boundaries of the Court's construction. (*See* Pl.'s Mem. in Supp. at 9-19; Defs.' Mem. in Opp'n to Pl.'s Mot. for Summ. J. ("Defs.' Mem. in Opp'n") at 2-11 [Doc. No. 203].) Both parties agree on one thing: that the Court made clear that the "said data" referenced in the comparing step must include, at minimum, the amount of the transaction. (*See* Pl.'s Mem. in Supp. at 12; Defs.' Mem. in Opp'n at 6-7.) Where they

---

[4] As well as claims 4(a) and 5(a).

differ, however, is whether the Court also meant to be understood as requiring that the transaction amount found in "said data" *must* be independently considered as part of the comparing process. Because the parties do not apparently dispute that US Bank's process relies on MICR information and not the transaction amount in conducting its own comparison, resolution of this issue is effectively dispositive of Solutran's infringement claim. (*See, e.g.*, Defs.' Mem. in Opp'n at 17.)

Having carefully reviewed the parties' arguments on the matter, the Court clarifies its initial construction of the comparing step as follows: (1) the data captured at the merchant's point of purchase must include the transaction amount; (2) the transaction amount must be one of the elements of the "said data" in the "data file," the latter of which must then be compared with the digital images; and (3) the "match" being made as part of the comparison step can involve, but need not necessarily involve, the transaction amount. In other words, additional data from the data file, such as MICR information, can independently form the basis of the match for purposes of claim 1(d), 4(e), and 5(e). While the transaction amount must be in the "said data" grouping, it need not be separately singled out and directly compared against a similar datum in the digital image.

### 2. Application of the Construction

In light of this updated—and, hopefully, clearer—construction, the Court concludes that summary judgment is warranted in favor of Solutran on the issue of infringement. The parties do not contest that US Bank's process involves a comparison step that is designed to match the digital image of the check with data captured in a data file. (*See, e.g.*, Defs.' Mem. in Opp'n at 9; Pl.'s Mem. in Supp. at 10.) Nor do they

contest that US Bank captures the transaction amount as part of the data captured at the point of purchase. (*See, e.g.*, Defs.' Mem. in Opp'n at 9.) Although it is apparent that the accused process does not rely on the transaction amount for purposes of forming matches (rather, it uses MICR information), that fact is not dispositive of infringement. In light of the Court's construction of claim 1(d), so long as US Bank captures the transaction amount *and* makes a match using some element (or elements) of the data in the data set, then its process infringes upon that claim. Here, this is exactly what the ECS system does.

As Defendants disputed infringement solely as to the comparing step, and do not, apparently, contest infringement as to all other steps of the asserted claims, resolution of this matter in favor of Solutran necessarily resolves the parties' infringement dispute. The Court accordingly grants Solutran's motion for summary judgment of infringement, and denies US Bank's corresponding motion for non-infringement.

## C.    Invalidity Under 35 U.S.C. § 101

US Bank alternatively argues that the '945 Patent is invalid under 35 U.S.C. § 101. It contends that Solutran's core claimed invention is an abstract concept, and that Solutran has not added significantly more to that abstract concept. (*See* Defs.' Mem. in Supp. at 12–25.) While the '945 Patent contains three independent claims, the parties acknowledge that the language in the other claims is similar or nearly identical to the language in Claim 1. (*See id.* at 22; Pl.'s Mem. in Opp'n at 15.) Because independent Claim 1 is representative of the '945 Patent, the analysis of this claim is representative of the other two independent claims. *See Intellectual Ventures, LLC v. Erie Indem. Co.*,

10

__Fed. App'x__, No. 2017-1147, 2017 WL 5041460, at * 2 (Fed. Cir. Nov. 3, 2017) (examining a representative claim for purposes of § 101 analysis).

Section 101 provides that only "inventions" are patent-eligible, and are granted to "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."  35 U.S.C. § 101. Addressing the language of § 101, the Supreme Court has stated, "In choosing such expansive terms . . . modified by the comprehensive 'any,' Congress plainly contemplated that the patent laws would be given wide scope."  *Bilski v. Kappos*, 561 U.S. 593, 609 (2010) (quoting *Diamond v. Chakrabarty,* 447 U.S. 303, 308 (1980)).

The Federal Circuit advises that "[a] § 101 analysis begins by identifying whether an invention fits within one of the four statutorily provided categories of patent-eligible subject matter: processes, machines, manufactures, and compositions of matter." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 713–14 (Fed. Cir. 2014).  Here, the invention at issue is claimed to be a "process," which falls within one of the four statutory classes. Section 100(b) defines this class, stating, "The term 'process,' means process, art or method, and includes a new use of a known process, machine, manufacture, composition of matter, or material."  35 U.S.C. § 100(b).  The Supreme Court has further stated that "[a] process is a mode of treatment of certain materials to produce a given result.  It is an act, or a series of acts, performed upon the subject-matter to be transformed and reduced to a different state or thing. If new and useful, it is just as patentable as is a piece of machinery." *Diamond v. Diehr,* 450 U.S. 175, 18 (1981) (citation omitted).

11

Despite § 101's broad reading of patent eligibility, the Supreme Court has long recognized three "implicit exception[s]" to the subject matter of patents for "laws of nature, natural phenomena, and abstract ideas." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) (citing *Assoc. for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 133 S. Ct. 2107, 2116 (2013)). A process that attempts to patent an abstract idea is not patentable under § 101. S*ee Bilski*, 561 U.S. at 609. The rationale for this exclusionary principle lies in the concern that general "building blocks of human ingenuity," such as abstract ideas, should not be limited for future innovations. *Alice,* 134 S. Ct. at 2354. However, courts should "tread carefully in construing this exclusionary principle lest it swallow all of patent law," *see id.* at 2354, because "all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.,* 566 U.S. 66, 71 (2012).

Courts apply a two-step test to challenges to the eligibility of patent subject matter under § 101. *See id.* at 79. First, courts must "determine whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 134 S. Ct. at 2355. If they are, courts then examine the elements of the disputed claims to determine whether they contain an inventive concept that sufficiently "transform[s]" the abstract idea into a patent-eligible application. *Id.* at 2357 (citing *Mayo*, 566 U.S. at 79).

Both steps of the *Alice* framework involve "overlapping scrutiny of the content of the claims." *Elec. Power Grp., LLC v. Alstom S.A.*, 1353 (Fed. Cir. 2016). But the Federal Circuit has observed that the first step in the § 101 inquiry is a "meaningful one,"

given that "a substantial class of claims are not directed to a patent-ineligible concept." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). Therefore, the step-one analysis may sometimes resolve the § 101 inquiry. *See Elec. Power*, 830 F.3d at 135. In other words, if the Court determines that the challenged claim is not directed to an abstract idea, it need not reach step two. *Alice*, 134 S. Ct. at 2355. However, if the Court finds otherwise, it then moves to the second step, examining the elements of the disputed claim to determine whether the claim contains a sufficiently transformative inventive concept so as to be patent eligible. *Id.* (citing *Mayo*, 566 U.S. at 79).

### 1.    Step One

US Bank argues that the '945 Patent specification emphasizes either the "abstract idea of delaying and outsourcing the scanning of paper checks" or the single, abstract concept of converting a customer's check electronically and crediting the merchant's account prior to imaging the check. (*See* Defs.' Mem. in Supp. at 14, 21–23.) The Court finds that US Bank's characterization fails to consider the character of the claims as a whole.

In conducting the "directed to" inquiry at step 1, courts must not simply ask whether the claims *involve* a patent-ineligible concept because, again, on some level, all patent-eligible claims involving physical products and actions *involve* laws of nature, natural phenomena, or abstract ideas. *Enfish*, 822 F.3d at 1335 (citing *Mayo*, 566 U.S. at 71–72). Rather, the "directed to" inquiry requires the Court to consider whether, in light of the patent specification, the character of the claim as a whole "is directed to excluded subject matter." *Id.* (citations omitted). US Bank fails to do so. *See Diehr*, 450 U.S. at

13

188.    Rather, as Solutran asserts, US Bank's characterization omits the physical processing of checks from the point of sale to a different location, and in a particular sequence. (*See* Pl.'s Mem. in Opp'n at 18–19.)  In so doing, US Bank improperly construes Claim 1 to "a high level of abstraction." *Enfish,* 822 F.3d at 1337.

The character of Claim 1, recited on page 4, *supra*, is directed to a physical process for processing paper checks in which data captured from a paper check at the merchant's point of purchase is used to credit a merchant's account, while the same paper check is scanned at a later time and in a different location to create an image of that check.  Specifically, in Claim 1(a), a data file is electronically captured from a paper check at the merchant's point of sale; in 1(b), the merchant's account is credited; in 1(c), the paper check is received, at a later time and place, and scanned to create an image; and in 1(d), the files are brought back together to compare digital images with the data file to find matches.  (*See* '945 Patent, Ex. A to Ernstene Aff. at 10:54-67 [Doc. No. 187-1].)

When focusing on the claimed advance of the '945 Patent over the prior art—as the Federal Circuit instructs courts to consider, *see Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016)—the '945 Patent purportedly improves upon the prior art through the processing of paper checks, via two-paths, at different times and locations, and the physical movement of paper checks.  (S*ee* '945 Patent, Ex. A to Ernstene Aff.  (Abstract)) ("The data files and image files are separated both in time and in space, with the data files being used to promptly initiate the transfer of funds to and from appropriate accounts, while the paper checks, at a remote location and typically lagging in time, are scanned to create digital image files and deposited as an

image or substitute check if deemed ACH ineligible."). This claimed advance is not directed to an abstract idea. Additional language found in the '945 Patent emphasizes that the claimed invention is rooted in an enhanced processing method and a palpable application of that process, in a different time and place. The "Summary of the Invention" describes the processing of paper checks, along with their physical transportation, (s*ee id.* at 4:6–18), Figure 3 of the '945 Patent also depicts this physical transfer and delivery with the image of a truck, (*see id.* (Fig. 3)) (illustrating '945 Patent, 5:50–52), and Figure 4 explains additional details of the process, including the "divergent flows" for the point-of-sale data, the physical checks, and images of the checks. (*See id.* (Fig. 4)) (illustrating '945 Patent, 6:22–26).

In US Bank's earlier, unsuccessful § 101 challenge before the PTAB, the Board found that US Bank improperly focused on "each method step individually without accounting sufficiently for the claims as a whole."[5] *US Bancorp,* 2014 WL 3943913, at *8. Examined as a whole, the PTAB found that the basic, core concept of Claim 1 is a method of processing paper checks, "which is more akin to a physical process than an abstract idea." *Id.* Moreover, the Board found that "there is nothing immediately

---

[5] US Bank asserts that the PTAB's earlier rejection of its § 101 challenge should not affect this Court's present determination. (*See* Defs.' Mem. in Supp. at 26–27; Defs.' Reply at 3 [Doc. No. 206].) Solutran concedes that "present law does not clearly establish" that the doctrine of estoppel applies to bar US Bank from reasserting its § 101 argument here. (*See* Pl.'s Mem. in Opp'n at 8 & n.10 [Doc. No. 194].) While the Federal Circuit has found that estoppel does not preclude the assertion of non-instituted grounds in a CBM or IPR proceeding, *see, e.g., Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1053 (Fed. Cir. 2017), the Supreme Court has not considered this issue. Accordingly, this Court does not assign preclusive effect to the PTAB's findings on § 101 validity. However, it finds the PTAB's guidance persuasive.

apparent about this basic, core concept that would indicate that it is directed to an abstract idea at all." *Id.* While the PTAB acknowledged that Claim 1 recited some fundamental economic practices, such as "crediting an account for a merchant," it could not "disembody such recitations from the claim viewed as a whole." *Id.* The PTAB pointed to other substantive limitations in Claim 1—"receiving said paper checks and scanning said checks with a digital scanner" and "comparing by a computer said digital images"— that narrow the claim. *Id.*

While there is no definitive test to determine what constitutes an "abstract idea," courts frequently compare the challenged claims "to those claims already found to be directed to an abstract idea in previous cases." *Enfish,* 822 F.3d at 1334 (citing *Alice,* 134 S. Ct. at 2357). In *Bilski,* 561 U.S. at 609–12, the Supreme Court cited as "guideposts" three abstract-idea decisions involving patented processes: *Gottschalk v. Benson*, 409 U.S. 63 (1972); *Parker v. Flook*, 437 U.S. 564 (1978); and *Diehr*, 450 U.S. at 175. It noted that in *Gottschalk*, 409 U.S. at 67, an algorithm used to convert binary-coded decimal numerals into pure binary code was not a patent eligible process under § 101, and any contrary conclusion "would wholly pre-empt the mathematical formula and in practical effect would be a patent on the algorithm itself." *Bilski*, 561 U.S. at 609–10 (quoting *Gottschalk,* 409 U.S. at 72). In *Flook*, 437 U.S. at 585–86, the Supreme Court evaluated the § 101 eligibility of a patent for monitoring the conditions during the catalytic conversion process in the petrochemical and oil-refining industries. The Court held that the bar against patenting abstract ideas "cannot be circumvented by attempting to limit the use of the formula to a particular technological environment" or adding

"insignificant postsolution activity." *Bilski,* 561 U.S. at 610 (quoting *Diehr,* 450 U.S. at 191–92). Finally, in *Diehr*, 450 U.S. at 177, the Court held that a new process for curing synthetic rubber, involving the use of a mathematical formula in several of the steps, completed by a computer, was not an abstract idea. The Court underscored the importance of considering the invention as a whole, and stated that although an abstract idea is not patent eligible, "an *application* of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection." *Id.* at 187–88.

Relying on this precedent, the Court in *Bilski* held that a patent claiming a general method for hedging risk in the energy commodities market was abstract, and therefore not patent-eligible under § 101. 561 U.S. at 611. The Court found that hedging is a "fundamental economic practice long prevalent in our system of commerce and taught in any introductory finance class," and it "is an unpatentable abstract idea, just like the algorithms at issue in [*Gottschalk*] and *Flook*." *Id.* at 611–12.

The PTAB considered this precedent in US Bank's petition for CBM review, finding the '945 patent's claims unlike the fundamental economic practices in *Alice* and *Bilski*, the mathematical formulas in *Flook*, or the basic tools of scientific and technological work in *Gottschalk*. *US Bancorp,* 2014 WL 3943913, at *8. US Bank suggests that the PTAB failed to adequately consider the then-recent *Alice* decision, and failed to solicit any briefing from the parties on the effect of that case. (*See* Defs.' Mem. in Opp'n at 26; Defs.' Reply at 3.) But the PTAB's ruling cites *Alice* several times and follows the two-step procedure that *Alice* and *Mayo* prescribe. *See U.S. Bancorp*, 2014 WL 3943913, at *6–8.

17

US Bank also asserts that two cases involving check-related patents provide sufficient bases for invalidating the '945 Patent. (Def.'s Mem. in Supp. at 13) (citing *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1347 (Fed. Cir. 2014); *Fidelity Nat'l Servs. v. DataTreasury Corp.*, CBM 2014-00020, 2015 WL 1967327, at *5–6 (PTAB April 29, 2015), *aff'd* 669 Fed. App'x 572 (Fed. Cir. 2016)). *Content Extraction* involved a claim directed to a computerized technique that recognized data in scanned documents and stored that data in appropriate data fields in a computer. 776 F.3d at 1345. But unlike here, the claimed advance was not based on when or how the hard copy documents were scanned, manipulated, or transported— instead, the claimed advance was simply in the computer recognition process. *DataTreasury* is similarly inapplicable, because the patent owner did not assert that the claimed advance was something more than the encrypted transferring of information, and instead argued that the presence of a tangible object precluded a finding that the claim was directed to an abstract idea. 2015 WL 1967327, at *10. Here, however, Claim 1 is directed to an improved technique for processing physical checks that emphasizes both the processing and the transportation of the checks.[6]

US Bank also cites authority for the proposition that patents involving computer functions are frequently found to be abstract at step one. (*See* Defs.' Mem. in Supp. at 19) (citing *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1240 (Fed. Cir. 2016)

---

[6] Moreover, *DataTreasury* was decided by the PTAB only four months prior to the PTAB's ruling on US Bank's petition. As Solutran observes, *DataTreasury* lacks persuasive authority, "given that the PTAB also considered and rejected the same type of section 101 challenge *to the '945 Patent itself*." (Pl.'s Mem. in Opp'n at 22.)

(generating a second computer menu from a first menu and sending it elsewhere); *Elec. Power*, 830 F.3d at 1353–54 (using a "process of gathering and analyzing information of a specified content, then displaying the results"); *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1333 (Fed. Cir. 2015) (using organizational and product group hierarchies to determine price); *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) (retaining information from the navigation of online forms); *Content Extraction*, 776 F.3d at 1347 (collecting data, recognizing certain data from the collected group, and storing recognized data)). The Court does not dispute this general observation. But while the '945 patent's claims may involve the use of scanning or imaging devices as part of the patented process, the patent does not claim advances over the prior art based on the processing, gathering, or manipulation of data via computer. *See RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) (finding a process that began with data, added an algorithm, and ended with data in a new form was directed to an abstract idea).

The Court similarly finds inapposite US Bank's authority regarding the abstract character of claims for fundamental economic practices, (*see* Defs.' Mem. in Supp. at 23) (citing *Alice*, 134 S. Ct. at 2356), methods of organizing human activity (*see id.*) (citing *Planet Bingo LLC v. VKGS LLC*, 576 F. App'x 1005, 1007–08 (Fed. Cir. 2014), and mental processes. (*See id.*) (citing *CyberSource Corp. v. Decisions, Inc.*, 654 F.3d 1366, 1371 (Fed. Cir. 2011)). As noted, the Court agrees with the PTAB that simply because individual elements of Claim 1 recite isolated, fundamental economic practices, such as "crediting an account for a merchant," when viewed as a whole, the claim's limitations

demonstrate that the claim is not directed to an abstract concept. *See US Bancorp*, 2014 WL 3943913, at *8. Neither is the core concept of Claim 1 a method of organizing human activity similar to the commercial practice of hedging in *Alice*, nor is it a mental process that can be performed by human thought alone, like the method claim in *CyberSource* for verifying the validity of a credit card transaction over the internet. Rather, the character of Claim 1 is directed to a physical process for processing paper checks that captures data from a paper check at the merchant's point of purchase, and uses the data to credit a merchant's account, while the same paper check is later scanned in a different location to create an image of that check.

Because the Court finds that Claim 1 of the '945 Patent is not directed to an abstract idea, it need not examine the claim under step two. However, even if Claim 1 were directed to an abstract idea, it would nevertheless satisfy the second step of the *Mayo/Alice* analysis.

### 2. Step Two

Again, at the second step of the analysis, courts consider whether the challenged claim contains an "inventive concept" that transforms the abstract concept into a patentable claim under § 101. Courts examine whether the limitations in the claim represent a patent-eligible application of the abstract idea. *See Alice*, 134 S. Ct. at 2357. Elements of a claim that consist of merely routine data gathering or involve a general computer function or activity do not meet this standard. *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015). Nor do claims that are limited to a specific technological environment. *See Elec. Power*, 830 F.3d at 1354. However, claims that

involve a "specific, discrete implementation" of an abstract concept have been found to be sufficiently inventive, even if none of the individual claim limitations are inventive when considered separately.  *See Bascom Global Internet Servs. v. AT & T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).

US Bank contends that Solutran's claimed invention is "nothing more than a trivial application of computers and scanning equipment to conventional check processing." (*See* Defs.' Mem. in Supp. at 15, 20.)  But "new steps in a process may be patentable even though all the constituents of the combination were well known and in common use before the combination was made."  *Diehr*, 450 U.S. at 188.  While US Bank argues that component parts of the claimed invention were known conventions, (*see* Defs.' Reply at 13), it fails to consider the ordered combination of the elements in Claim 1, focusing instead on the individual elements.  Nor does it argue that these combined elements were a known convention.  Rather, as Solutran notes, "Claim 1's elements describe a new combination of steps, in an ordered sequence, that was never found before in the prior art and has been found to be a non-obvious improvement over the prior art by both the USPTO examiner and the PTAB's three-judge panel (affirmed by the Federal Circuit)."  (Pl's Mem. in Opp'n at 27.)  The ordered combination captures data from a paper check at the merchant's point of sale in order to credit the merchant's account, while the same check is later scanned at a different location to create an image.  The image and the data are then reunited and compared to find matches.  While US Bank asserts that the claim fails to recite that the checks are "transported," (*see* Defs.' Reply at 13), Claim 1(c) indicates that the paper checks are "receiv[ed]."  This Court previously

construed "receiving said paper checks" as "the paper checks are received from a location different from where the checks are scanned" in its claim construction ruling, *see Solutran*, 2017 WL 2274959, at *5. This construction sufficiently conveys that the checks are moved from one location to another.

Specifically with respect to patented "processes" under § 101, one means by which courts evaluate their patent eligibility is the "machine-or-transformation test." *See Bilski*, 561 U.S. at 602–03. Under this test, a claimed invention is not deemed patentable if it is not tied to a machine and does not transform an article. *Id.* The Supreme Court has held that this is not the sole means by which to decide whether an invention is a patent-eligible process, but it is "a useful and important clue, an investigative tool." *Id.* at 604.

The Court agrees with Solutran that the '945 Patent's claims pass the machine-or-transformation test. As Solutran explains, "the physical paper check is transformed into a different state or thing, namely into a digital image." (Pl.'s Mem. in Opp'n at 29.) In *Bilski*, the Federal Circuit stated that the transformation of raw, physical data, into a visual depiction of that object satisfies the transformation part of the machine-or-transformation test. 545 F.3d at 962–63. Moreover, the transformation here is "central to the purpose of the claimed process," *id.* at 962, and "impose[s] a meaningful limit on the scope of the claim." *Versata Dev.*, 793 F.3d at 1335. Solutran explains that receiving and scanning paper checks *after* they have been moved from the merchant's point of sale is central to the purpose of the '945 Patent: "If this step (c) were removed from the claims, then step (d) would be incomprehensible and steps (a) and (b) would merely

22

describe relatively routine practices found in [point of purchase] check transactions.  Step (c) therefore is not 'mere data gathering' or 'routine, post-solution activity,' but imposes a meaningful limit on the claimed process."  (Pl.'s Mem. in Opp'n at 30–31.)  The Court therefore finds that even if it reaches step 2 in the analysis, the elements of Claim 1 contain a sufficiently transformative inventive concept so as to be patent eligible.

Accordingly, for all of the reasons set forth above, the Court finds that the claims of the '945 Patent are not abstract, but rather, are patent eligible under § 101. Defendant's summary judgment motion is therefore denied on this basis as well.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Plaintiff's Motion for Summary Judgment [Doc. No. 183] is **GRANTED**; and

2. Defendants' Motion for Summary Judgment [Doc. No. 170] is **DENIED**; and

3. The remaining issues are set for trial on March 6, 2018.  A pretrial order will follow.


Dated:  November 27, 2017                         s/Susan Richard Nelson
                                                  Susan Richard Nelson
                                                  United States District Judge